In the Matter of PHILIP-TOBY REALTIES, INC., Respondent, against ROBERT C. WEAVER, as State Rent Administrator, Appellant.

First Department, June 4, 1959.

*Harold Zucker* of counsel (*Nathan Heller*, attorney), for appellant.

*Walter S. Cooper* for respondent.

VALENTE, J. The State Rent Administrator appeals, by permission granted pursuant to section 1304 of the Civil Practice Act from an order which remanded, for further consideration, a landlord's application for a building-wide increase of rents under subdivision 5 of section 33 of the State Rent and Eviction Regulations. In June, 1956, the landlord applied for the rent increase on the ground that, for the 12-month period ending May 31, 1956, its net annual return was less than the 6% permitted by statute. The State Rent Administrator authorized an overall increase of $3,115.32, which was to be allocated entirely among the controlled tenants of the building.

The landlord then brought this proceeding under article 78 of the Civil Practice Act to review the action of the Administra-

tor urging, among other grounds not applicable on this appeal, that the Administrator, in computing net operating income, had unreasonably and arbitrarily disallowed certain claimed expenses of the landlord, as to fuel, management fees, and alterations to a penthouse suite. Special Term granted the landlord's petition to the extent of remanding the entire proceeding to the State Rent Administrator to proceed in accordance with the memorandum opinion filed by the learned Special Term Justice.

As to the fuel and management expenses it was held that, before the actual expenses claimed by the landlord during the test period could be rejected by the Administrator, such rejection must rest on a finding that the expenditures were unreasonable or excessive and not upon any standards adopted by the Rent Commission to aid in the disposition of hardship applications. Regarding the matter of alteration costs, Special Term found fault with the Administrator's amortization of those expenses over a 20-year period.

We have concluded that there was no arbitrary or unreasonable conduct on the part of the Administrator in disposing of the landlord's application and that his determination should not have been disturbed by Special Term. The standards adopted by the commission with reference to hardship applications under subdivision 5 of section 33 of the State Rent and Eviction Regulations are set forth in a manual, Accounting Procedures and Practice, published by the Administrator on July 1, 1957 and made available to the public. The statute (State Residential Rent Law, § 4, subd. 4, par. [a]; L. 1946, ch. 274, as amd. by L. 1957, ch. 755) provides that the commission shall make regulations for the individual adjustment of maximum rents where " ( 1 ) the rental income from a property yields a net annual return of less than six per centum of the valuation of the property. * * * Net annual return shall be the amount by which the earned income exceeds the operating expenses of the property ". Subdivision 5 of section 33 of the Rent Regulations was adopted pursuant to the power so granted.

In processing applications under subdivision 5 of section 33, the goal of the commission in determining the net annual return, as announced in the Accounting Procedures and Practice, " is the establishment of the annually recurring amounts of income and expenses, confined to those items which concern themselves with the operation of the building ".

Addressing ourselves to the disputed items in this case, as to the fuel bills, the petitioner complained that the Administrator did not accept as controlling the actual fuel consumption during

the test year but instead took the average of three years, including two years when the property was in the hands of a former owner. Clearly the commission had discretion to accept the figures of the test year, or it could use them in conjunction with evidence as to former years where the fuel expenses for the test year were admittedly unusual. In disturbing the commission's use of the three-year average, Special Term failed to give sufficient weight to the primary function of the commission to ascertain, as a proper expense, an annually recurring one. The method used to reach that result was not such an unreasonable exercise of discretion as to warrant judicial interference.

In its application for relief under subdivision 5 of section 33 of the regulations, the landlord had claimed as an operating expense management fees, paid to an independent managing agent, of 5% of the rental income. The commission used its own management rate formula for the type of building involved, i.e., 4% on the first $100,000 of rental income, 3% on the second $100,000, 2% on the next $300,000 and 1% on all rental income in excess of $500,000. In so doing, the commission rejected the landlord's claim for the higher amount based on its contract with the managing agents for a fee equal to 5% of the gross rentals. Special Term, although agreeing that the contract price was not controlling, held that, before the Administrator may reject the contract price, he must make some factual showing of the necessity for so doing.

We have already approved the use by the Administrator of the management rate formula in owner-managed buildings. (*Matter of Dicmac Holding Co.*, v. *Weaver*, 4 A D 2d 859.) In *Matter of Bronx Park East Co.* v. *Weaver* (5 A D 2d 810) we inferentially placed our imprimatur on the use of the formula in agent-managed properties. By rejecting the contract rate in the instant case, the Administrator in effect found that there was no unusual element presented nor any peculiar conditions shown which would impel deviation from the standards fixed by the Administrator based on prior studies and general experience. Resort to a standard rate prevents landlords from obtaining the benefits of improvident or collusive arrangements which would be difficult to uncover. Where a statute or a regulation mandates the use of a specific basis for a rent increase, the commission may not vary the statute or regulations by the adoption of a different standard. (*Matter of Bajart Management* v. *Weaver*, 8 A D 2d 56.) However, in the determination of the quantum of a particular expense, the Administrator does not impinge upon any statutory or regulatory norm when, based on

210

study and experience, some definite standard is drawn upon as a measure of fairness. The burden then rests upon a petitioner-landlord to demonstrate that adherence to the standard is unreasonable or arbitrary. Special Term, in the instant case, erred in shifting the burden to the Administrator to sustain the schedule for management fees. The use of the schedule was prima facie a reasonable exercise of discretion. Only if petitioner had shown that an unusual situation prevailed in its building requiring the payment of management fees, over and above the Administrator's schedule, would the Administrator be required to give effect to the management contract. Since this was not shown, the Administrator's rejection of the contract rate was a proper exercise of discretion.

Finally, we find that the method adopted by the Administrator as to a 20-year amortization for painting and floor scraping of the penthouse is not basically unfair. Complete analysis of the circumstances involved fully justified the 20-year amortization rate applied. In view of the comparative financial insignificance of this issue in the entire proceeding, we devote no further space in discussing it.

The order should therefore be reversed on the law and the petition dismissed, without costs.

BREITEL, J. P., RABIN, M. M. FRANK and STEVENS, JJ., concur.

Ordered unanimously reversed on the law, and the petition dismissed, without costs.